[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Espen v. Wood Cty. Bd. of Elections,* Slip Opinion No. 2017-Ohio-8223.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8223

THE STATE EX REL. ESPEN *v.* WOOD COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Espen v. Wood Cty. Bd. of Elections,* Slip Opinion No. 2017-Ohio-8223.]**

*Elections—Initiative—Mandamus and prohibition—County board of elections not authorized to decide legality or constitutionality of proposed charter amendment's substantive terms—R.C. 3501.28(M)(1)(a) violates separation-of-powers doctrine by attempting to confer judicial review power on boards of elections—Board of elections did not abuse discretion, engage in fraud or corruption, or ignore applicable law in validating contested signatures on initiative petition—Writs denied.*

(No. 2017-1313—Submitted October 11, 2017—Decided October 19, 2017.)

IN MANDAMUS and PROHIBITION.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relator, David W. Espen, seeks a writ of mandamus and/or a writ of prohibition to compel respondent, the Wood County Board of Elections, to remove a charter amendment petition from the November 2017 ballot. We deny the writs.

*Background and procedural motions*

{¶ 2} On August 7, 2017, the city of Bowling Green received a petition proposing an amendment to the city charter adding a new Article I, Section 1.05, titled "Community Rights to a Healthy Environment and Livable Climate." On September 6, the Wood County Board of Elections certified the proposed amendment to the November 2017 ballot.

{¶ 3} Espen filed a letter of protest on September 11. The board held a hearing, and on September 19, issued a written decision overruling the protest.

{¶ 4} Espen filed the present expedited election complaint the same day. The board of elections filed an answer on September 25, 2017. On October 2, the board filed a motion for leave to file an amended answer, after noticing that its original answer had inadvertently admitted the factual averments in paragraph 21 of the complaint, which the board wished to deny. We grant that motion.

{¶ 5} The members of the Committee of Petitioners for the Bowling Green Charter Amendment, Lisa Kochheiser, Jennifer Karches, Joseph R. DeMare, and Bradley M. Holmes ("the committee"), filed an unopposed motion for leave to intervene, a proposed answer, and an amicus brief in support of the board of elections. We construe Civ.R. 24 liberally to permit intervention. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 41. Pursuant to Civ.R. 24(B)(2), we grant the motion to intervene and accept the amicus brief as the committee's brief on the merits.

*Legal analysis*

**{¶ 6}** Espen raised two issues in his protest before the board of elections. First, he challenged the validity of the petition, alleging that it exceeded the municipal powers of self-government set forth in the Ohio Constitution. And second, he alleged that the petition had insufficient valid signatures to qualify for the ballot because five signatures the board accepted should have been invalidated. After hearing testimony and reviewing documents, the board concluded that the five contested signatures were valid and that Espen had "presented no testimonial evidence to support his contention that the proposed Bowling Green Charter Amendment exceeded the scope of municipal initiative power."

**{¶ 7}** When reviewing a decision of a county board of elections, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9.

1.      The protest against the substance of the petition

**{¶ 8}** Ohio Constitution, Article XVIII, Section 3, provides that municipalities "have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." This authority is also extended to the people acting in their sovereign capacity: "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action * * *." Ohio Constitution, Article II, Section 1f.

**{¶ 9}** A municipal ordinance created under the power of local self-government "must relate 'solely to the government and administration of the internal affairs of the municipality.' " *In re Complaint of Reynoldsburg v. Columbus S. Power Co.*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 25, quoting

*Beachwood v. Cuyahoga Cty. Bd. of Elections*, 167 Ohio St. 369, 148 N.E.2d 921 (1958), paragraph one of the syllabus. The limitations on municipal lawmaking in Article XVIII, Section 3 apply with equal force to municipal charter provisions. Ohio Constitution, Article XVIII, Section 7.

{¶ 10} Espen contended that the proposed charter amendment violates Article XVIII, Section 3 in at least four ways. Proposed Article I, Section 1.05(a) of the charter provides:

> The people of the City of Bowling Green, and the natural communities and ecosystems in Bowling Green, possess the right to a healthy environment and livable climate. That right shall include the right to be free from new infrastructure for fossil fuel transportation within the City of Bowling Green or on property owned by the City of Bowling Green, except for infrastructure to transport fossil fuels to end-users within Wood County.

{¶ 11} Espen challenges this provision as a regulation of commerce that occurs outside Bowling Green's municipal boundaries and therefore beyond the city's authority to enact. Subpart (b) of the charter amendment provides: "City of Bowling Green law enforcement, and cooperating agencies acting within the jurisdiction of the City of Bowling Green, shall have no lawful authority to surveil, detain, arrest, or otherwise impede persons enforcing these rights."

{¶ 12} Espen further challenges this clause as a regulation of county, state, and federal law-enforcement officials, which Bowling Green is without authority to enact.[1] And he opposes other sections of the charter amendment on the grounds that they purport to regulate the jurisdiction of the courts.

---

[1] Espen also alleges that subpart (b) of the amendment is defective because it is administrative in nature. In *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176,

**{¶ 13}** However, the question before the court is not whether the proposed amendment would be constitutional if enacted, but whether the board of elections has the authority to make that determination. And in answer to that question, we have held:

> The boards of elections * * * do *not* have authority to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms. An unconstitutional amendment may be a proper item for referendum or initiative. Such an amendment becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction.

(Emphasis sic.) *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 11.

**{¶ 14}** Our jurisprudence limiting the authority of board of elections to review the constitutionality of proposed measures rests squarely on separation-of-powers considerations. *Youngstown* at ¶ 11 (holding that decisions of constitutional interpretation belong to the courts, not the boards of elections). The separation of powers is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 159, 503 N.E.2d 136 (1986).

**{¶ 15}** Contrary to the argument advanced by the parties, the statutory amendments made by 2016 Sub.H.B. No. 463 do not change this result. Newly

---

2016-Ohio-5919, 69 N.E.3d 696, we upheld the decision of a board of elections refusing to place a measure on the ballot "[b]ecause a *significant portion* of the proposed ordinance [was] administrative." (Emphasis added.) *Id*. at ¶ 20. Unlike the ordinance at issue in *Sensible Norwood*, the current proposal cannot fairly be characterized as administrative when considered in its totality.

enacted R.C. 3501.38(M)(1) requires county boards of elections to examine petitions to determine

> (a) [w]hether the petition falls within the scope of a municipal political subdivision's authority to enact via initiative, including, if applicable, the limitations placed by Sections 3 and 7 of Article XVIII of the Ohio Constitution on the authority of municipal corporations to adopt local police, sanitary, and other similar regulations as are not in conflict with general laws, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot. The petition shall be invalid if any portion of the petition is not within the initiative power * * *.

This attempt by the General Assembly to grant review power to the election boards violates the Constitution because " 'the administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.' " *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 45, quoting *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph one of the syllabus. To the extent that R.C. 3501.38(M)(1)(a) authorizes and requires boards of elections to make substantive, preenactment legal evaluations, it violates the separation-of-powers doctrine and is unconstitutional.[2]

{¶ 16} We agree with the board of elections that it had no authority to invalidate the charter petition based on a substantive evaluation of its legality, and we affirm the rejection of Espen's first protest argument.

---

[2] Other provisions enacted as part of 2016 Sub.H.B. No. 463, such as R.C. 3501.11(K)(2), are not implicated in this case, because they relate exclusively to the adoption of *county* charter amendments.

2.     The protest against the validity of the signatures

**{¶ 17}** Alternatively, Espen claimed that the petition failed to qualify for the ballot because in certifying the amendment proposal, the board verified five invalid signatures. To qualify for the ballot, the petition needed 714 valid signatures. The board of elections verified 715 signatures. Thus, if successful, Espen's protest would have left the petition with too few signatures.

**{¶ 18}** The challenge was based on R.C. 3501.38(C), which requires each signer of a part-petition to indicate the date of signing and the location of the signer's voting residence. "The voting address given on the petition shall be the address appearing in the registration records at the board of elections." R.C. 3501.38(C). A board of elections "may" disqualify a petition signature when the residence listed by the signer is not the same as the residence on file with the board for that signer. *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.*, 49 Ohio St.3d 102, 106, 551 N.E.2d 150 (1990).

**{¶ 19}** Espen identified five alleged mismatches:

- On their voter-registration forms, Kylor Kavahi, Cara Kalouris, and Sarah Wilmore each listed 1417 East Wooster Street as their residential address. But when they signed the petition, Kalouris and Wilmore wrote 1417 Bromfield, and Kavahi wrote 1417 Harshman Bromfield.

- Jacob Dyer registered at 522 Thurstin Street, but wrote "GT09-03 Kappa Sigma" as his address on the part-petition.

- Olivia Diehl registered at 311 Mercer Road, Apt. D336, but listed "Kreischer Darrow" on the petition as her address.

**{¶ 20}** However, the board of elections determined that in each case, the address on the petition was effectively the same as on the registration form. Terry Burton, deputy director of the board of elections, testified at the protest hearing that the addresses were the same. With respect to Kavahi, Kalouris, and Wilmore, Burton testified that 1417 is the street address, and Harshman Bromfield is the name

of the dormitory. According to Burton, the board of elections treats both designations as denoting the same address:

> Well, in the example of [Kavahi], she registered under the East Wooster Street address, and in our voter registration system, that is automatically converted to the Bromfield address. Our understanding is that those are equivalents in our system.
>
> And so if they would have listed the Bromfield address in the voter registration system, we would have entered it there with the mailing address as being Wooster. If they register at the Wooster Street address, we list it as Bromfield with Wooster as the mailing address.

{¶ 21} The same is true of Dyer, who listed the name of his fraternity house instead of its street address on the petition, and Diehl, who listed her dorm room rather than its address.

{¶ 22} In treating the two designations as synonymous, the board of elections was following the directions of the secretary of state, who has instructed the boards of elections not to disqualify every apparent mismatch:

> If an elector's address given on the petition differs from that on file with the board, then the board *must invalidate* that signature unless the signer has provided the elector's residence information in a format that is consistent with postal regulations as opposed to the political subdivision on file with the board of elections (e.g., writing "Columbus" as the city when the elector's political subdivision is "Perry Township"). A board must not reject a signature solely based on this difference.

8

(Emphasis sic.) Ohio Secretary of State Directive 2017-15 (Aug. 8, 2017), *see* Ohio Election Official Manual, Chapter 11, Section 1.05(C).[3] The secretary's directive is consistent with the purpose of R.C. 3501.38, which is "to enable the board of elections to determine whether a signer of the petition timely signed the petition and is a registered voter." *Blackmore v. Nasal*, 74 Ohio App.2d 382, 383-384, 599 N.E.2d 298 (2d Dist.1991).

**{¶ 23}** When the secretary of state, as the state's chief election officer, has adopted a reasonable construction of an elections statute, this court must defer to that interpretation. *State ex rel. Colvin v. Bruner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 57. The board of elections has verified that the five contested signatures came from registered electors. We see no reason to disenfranchise those voters for using a different designation of their residential addresses when that designation is the equivalent of the street address listed on their registration forms.

**{¶ 24}** We affirm the board of elections' decision rejecting Espen's second protest argument.

*Conclusion*

**{¶ 25}** Because we find that Espen's protest had no merit, we deem it unnecessary to address the committee's procedural objections to the protest and this lawsuit. We hereby deny the petitions for writs of mandamus and prohibition.

Writs denied.

O'CONNOR, C.J., and O'NEILL and FISCHER, JJ., concur.

O'DONNELL, J., concurs in judgment only.

FRENCH, J., concurs in part and dissents in part, with an opinion joined by KENNEDY and DEWINE, JJ.

---

[3]https://www.sos.state.oh.us/globalassets/elections/directives/2017/dir2017-15_eom_ch_11.pdf.

_____

**FRENCH, J., concurring in part and dissenting in part**

{¶ 26} I concur in the majority's decision to grant the motions for leave to file an amended answer and for leave to intervene. With respect to the merits, however, I respectfully dissent and would grant a writ of mandamus compelling the Wood County Board of Elections ("board") to remove the charter-amendment petition from the November 2017 ballot based on the lack of sufficient signatures.

{¶ 27} Relator, David W. Espen, raised two issues in his unsuccessful protest. First, he argued that the petition did not include a sufficient number of valid signatures to qualify for the ballot. He specifically identified five signatures that he claims the board was legally required to invalidate. Second, Espen argued that the petition exceeded the municipal powers of self-government, as set forth in the Ohio Constitution. I agree with Espen that the petition was procedurally defective because it lacked a sufficient number of valid signatures to qualify for the ballot.

{¶ 28} To qualify for the ballot, the petition required 714 valid signatures. The board verified as valid 715 of the 1,230 signatures submitted. Espen challenged five of the verified signatures as invalid under R.C. 3501.38(C). He contends that the board had a legal duty to invalidate those signatures.

{¶ 29} When this court reviews a board of elections' decision, the standard is whether the board engaged in fraud or corruption, abused its discretion or acted in clear disregard of applicable legal principles. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9.

{¶ 30} R.C. 3501.38 prescribes rules governing petitions presented to a board of elections and includes specific requirements applicable to petition signers. For example, R.C. 3501.38(A) provides that only electors qualified to vote on the subject of a petition may sign the petition. R.C. 3501.38(C) states:

> Each signer shall place on the petition after the signer's name
> * * * the location of the signer's voting residence, including the
> street and number if in a municipal corporation or the rural route
> number, post office address, or township if outside a municipal
> corporation. The voting address given on the petition shall be the
> address appearing in the registration records at the board of
> elections.

R.C. 3501.38(C) thus contains two requirements. First, if the residence is in a municipal corporation, each signer must identify his or her voting residence by street name and number. Second, the voting address listed on the petition must be the same as the address that appears in the board's voter-registration records.

{¶ 31} "[S]trict compliance is the default for election laws and * * * that standard is lowered only when the statutory provision at issue expressly states that it is." *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 40. "R.C. 3501.38(C) does not permit substantial compliance * * *." *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 65 Ohio St.3d 167, 169, 602 N.E.2d 615 (1992). The board does not dispute that R.C. 3501.38(C) requires strict compliance.

{¶ 32} Espen's protest stated that the signatures of Kylor C. Kavahi, Cara C. Kalouris, Sarah C. Wilmore, Jacob L. Dyer, and Olivia K. Diehl are accompanied by addresses that do not match the addresses appearing on their voter-registration records. On their voter-registration forms, Kavahi, Kalouris, and Wilmore each listed their address as 1417 East Wooster Street. But when they signed the petition, which expressly asked for "VOTING RESIDENCE ADDRESS STREET AND NUMBER," Kavahi wrote "1417 Harshman Bromfield," and Kalouris and Wilmore wrote "1417 Bromfield." Dyer's voter-registration lists an address of 522 Thurstin Street, but on the petition Dyer wrote "GT09-03 Kappa

11

Sigma" as his address. Diehl's voter registration lists an address of 311 North Mercer Road, but on the petition she listed simply "Kreischer Darrow" as her address. Facially, none of the addresses accompanying the challenged petition signatures match the corresponding addresses in the board's voter-registration records.

{¶ 33} Despite its acknowledgment that strict compliance with R.C. 3501.38(C) is required, the board argues that this court has afforded boards of election discretion to validate a signature despite noncompliance with that statute. *In re Protest Filed by Citizens for Merit Selection of Judges, Inc.*, 49 Ohio St.3d 102, 103, 551 N.E.2d 150 (1990), presented the question "whether a board of elections may disqualify a signature on an initiative petition * * * where the residence indicated by a signer is not the same as the residence on record with the board of elections for said signer." We answered that question in the affirmative. *Id.* at 106.

{¶ 34} The board cites *In re Protest* for the proposition that it has discretion to determine whether to invalidate a signature based on a discrepancy between the address listed on the petition and the address listed on the signer's voter registration. But *In re Protest* did not address whether disqualification by the board was mandatory or discretionary. There, the board of elections had rejected 9,100 signatures because of discrepancies between the addresses on the petition and the addresses in the voter-registration records. With our holding, this court merely approved the board's action. We were not required to determine whether the board would have had discretion to approve the challenged signatures, because it had already disqualified them.

{¶ 35} In support of its validation of the challenged signatures, the board relies on Ohio Secretary of State Directive 2017-15 (Aug. 8, 2017), *see* Ohio Election Official Manual, Chapter 11, Section 1.05(C), found at

12

https://www.sos.state.oh.us/globalassets/elections/directives/2017/dir2017-15_eom_ch_11.pdf.  It states:

> If an elector's address given on the petition differs from that on file with the board, then the board *must invalidate* that signature unless the signer has provided the elector's residence information in a format that is consistent with postal regulations as opposed to the political subdivision on file with the board of elections (e.g., writing "Columbus" as the city when the elector's political subdivision is "Perry Township").  A board must not reject a signature solely based on this difference.

(Emphasis sic.)  *Id.* at 11-13 to 11-14.  Immediately prior to that language, however, the same manual incorporates the first requirement of R.C. 3501.38(C), that "[t]he petition must contain the elector's voting residence address, *including the house number and street name* or Rural Free Delivery (RFD) number, and the appropriate city, village, or township."  (Emphasis added.)  *Id.* at 11-13.

{¶ 36} The board contends that the challenged signatures fall within the Election Official Manual's postal-regulation exception because the street addresses listed for the signers in the voter-registration records are the street addresses for the residence halls and/or fraternity houses that the signers identified as their addresses on the petition.  Terry Burton, the deputy director of the board, testified at the protest hearing, "Our understanding is that those are equivalents in our system."

{¶ 37} The postal-regulation exception does not apply here.  The exception directs a board of elections to overlook the difference between an address on a petition and the signer's address on the voter register only if the address on the petition "is consistent with postal regulations *as opposed to the political subdivision* on file with the board of elections (e.g., writing 'Columbus' as the city when the

elector's political subdivision is 'Perry Township.' " (Emphasis added.) *Id.* at 11-13 to 11-14. The exception excuses only differences between the city, village or township listed on the petition and the political subdivision listed on the voting-registration records. It does not excuse a difference between the street number and street name on the petition and the voter register, and it does not excuse a failure to list any street number or street name. Because the postal-regulation exception is inapplicable, the Election Official Manual required the board to invalidate the challenged signature.

{¶ 38} Even if the board were able to determine that the information the signers provided on the petition identifies the same residences as the addresses listed in the board's voting records, that equivalence does not cure the statutory defect. Both R.C. 3501.38(C) and the Election Official Manual require that a petition contain the elector's voting-residence address, including the house number and street name. None of the challenged signatures were accompanied by an address that included both a street number and a valid street name. And nothing in the Election Official Manual suggests that a board of elections may validate a signature accompanied by a disparate address that does not comply with the statute in that regard.

{¶ 39} In *State ex rel. Citizens for Responsible Taxation*, 65 Ohio St.3d at 169, 602 N.E.2d 615, the board of elections rejected the signatures of petition signers who listed post-office boxes instead of voting-residence addresses even though the board had information from which it could have otherwise confirmed the signatures' validity. *Id.* at 170. The board explained that the secretary of state had instructed it not to count signatures that provided only a post-office box as an address. *Id.* Citing R.C. 3501.11(P), which requires boards of elections to perform the duties prescribed by law or by the rules of the secretary of state, we held that the board had a duty to follow the secretary of state's instruction, absent a showing that the order had no statutory basis. *Id.* at 170-171. Here, the Election Official

14

Manual published by the secretary of state required the board to invalidate the five challenged signatures because the accompanying addresses on the petition differed from those on file with the board, and the postal-regulation exception did not apply. I therefore conclude that the board abused its discretion and acted in clear disregard of applicable legal principles in validating the challenged signatures.

{¶ 40} Without the challenged signatures, the petition does not have the requisite number of valid signatures to be submitted to the ballot. I would therefore grant a writ of mandamus ordering the board to remove the proposed amendment from the November 2017 general-election ballot.

KENNEDY and DEWINE, JJ., concur in the foregoing opinion.

—————————————

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for relator.

Paul A. Dobson, Wood County Prosecuting Attorney, and Linda F. Holmes and David T. Harold, Assistant Prosecuting Attorneys, for respondent.

Terry J. Lodge, for intervening respondents.

Porter, Wright, Morris & Arthur, L.L.P., and L. Bradfield Hughes, urging issuance of the writs for amici curiae, Affiliated Construction Trades Ohio Foundation, the Ohio Chamber of Commerce, and the American Petroleum Institute.

—————————————