[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections,* Slip Opinion No. 2018-Ohio-1602.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1602

THE STATE EX REL. KHUMPRAKOB ET AL. *v.* MAHONING COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections, Slip Opinion No. 2018-Ohio-1602.*]

*Mandamus—County board of elections abused its discretion in finding that proposed charter amendment exceeds city's legislative power—Writ compelling board to place proposed amendment on May 2018 ballot granted.*

(No. 2018-0404—Submitted April 12, 2018—Decided April 24, 2018.)

IN MANDAMUS.

————————

**Per Curiam.**

{¶ 1} In this case, relators, four Youngstown electors,[1] seek a writ of mandamus to compel respondents, the Mahoning County Board of Elections and its members (collectively, "the board"), to place a proposed amendment to the Youngstown city charter—a so-called "Youngstown Drinking Water Protection Bill of Rights"—on the May 2018 ballot. The proposed charter amendment, if adopted by Youngtown's electors, would in general terms (1) recognize certain rights of Youngstown residents and of "ecosystems and natural communities within the city" to "clean water, air, and soil" and to be free from certain fossil-fuel drilling and extraction activities, (2) require the city to prosecute violations of the amendment and allow the city to recover attorney fees and expert costs incurred in prosecuting violations, (3) impose strict liability on any government or corporation that violates the rights established by the amendment, (4) restrict the use of funds allocated to the city's water and sewer infrastructure, and (5) give the people of Youngstown the right "to compel their governments to protect their rights, health, and safety."

{¶ 2} On February 12, 2018, the committee formed to have the measure placed on the ballot submitted its part-petitions to the Youngstown city clerk. After the board certified a sufficient number of valid signatures to qualify the measure for the ballot, the Youngstown City Council passed an ordinance instructing the board to place the proposed charter amendment on the May 2018 ballot. But the board, finding that the proposed amendment "contains provisions that are beyond the scope of the City of Youngstown's power" to enact, voted not to place the proposed amendment on the ballot.

{¶ 3} On March 16, relators filed this original action for a writ of mandamus to compel the board to place the proposed charter amendment on the ballot.

---

[1] The four named relators are Mary C. Khumprakob, Hattie Wilkins, Lynn Anderson, and Susan L. Beiersdorfer.

**{¶ 4}** To be entitled to a writ of mandamus, relators must prove, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. When we review a decision of a county board of elections, the standard is whether the elections board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9.

**{¶ 5}** We addressed a similar issue last year in *State ex rel. Flak v. Betras*, ___ Ohio St.3d ___, 2017-Ohio-8109, ___ N.E.3d ___, which involved an earlier version of the Youngstown Drinking Water Protection Bill of Rights. Like the current proposal, the version at issue in *Flak* would have given Youngstown residents and the " 'ecosystems and natural communities within the city' " the right to " 'clean water, air, and soil' " and to be free from certain fossil-fuel drilling and extraction activities. *Id.* at ¶ 4, quoting the proposed charter amendment at issue in that case. The former proposal also would have authorized "private citizens to enforce their rights through nonviolent direct action or by filing suit as a private attorney general." *Id.*

**{¶ 6}** In *Flak*, applying our caselaw that preceded the enactment of 2016 Sub.H.B. No. 463, we examined whether the board had abused its discretion in determining that the measure was outside the municipality's legislative authority. *See Flak* at ¶ 9, 17. We agreed with the board's determination that a municipality lacks legislative power to authorize Youngstown residents to file suit as a "private attorney general," because a municipality cannot create a new cause of action. *Id.* at ¶ 15-16.

**{¶ 7}** Significantly, the offending provision in *Flak* is not included in the proposed charter amendment now before us, and the board offers no clear support for

its conclusion that relators' current proposal is beyond the scope of the city's legislative power. The hearing transcript reveals that two members of the board decided this matter on the basis of *Flak*, but there was no creation of a private right of action—an "individual's right to sue in a personal capacity to enforce a legal claim," *Black's Law Dictionary* 1520 (10th Ed.2014)—in this case.

{¶ 8} A municipality retains the ability to "make the violation of any of its ordinances a misdemeanor, and provide for the punishment thereof by fine or imprisonment, or both." R.C. 715.67. The proposed charter amendment's requirement that the city prosecute violations of the amendment committed by corporations and its establishment of a strict-liability mens rea for violations may become elements of future ordinances. But as presented to the board, the proposed amendment's provisions are vague and largely aspirational. They do nothing without further legislative action by the city. Thus, although the proposed amendment would not necessarily be constitutional or legally enforceable if enacted, the board abused its discretion in finding that the measure exceeds Youngstown's legislative power.

{¶ 9} We hold that relators have a clear legal right to have their proposal placed on the ballot and that the board has a clear legal duty to provide that relief. Also, because relators could not have challenged the board's action until the board voted to exclude the proposed measure from the ballot, we hold that relators lack an adequate remedy in the ordinary course of the law.

Writ granted.

O'CONNOR, C.J., and KENNEDY, DEWINE, and DEGENARO, JJ., concur.

FISCHER, J., concurs in judgment only, with an opinion.

FRENCH, J., dissents, with an opinion joined by O'DONNELL, J.

_____

**FISCHER, J., concurring in judgment only.**

{¶ 10} I write separately to make clear my reasons for agreeing with this court's judgment in this case.

**{¶ 11}** Last year, this court held that respondents, the Mahoning County Board of Elections and its members (collectively, "the board"), did not violate a clear legal duty when they excluded a "Youngstown Drinking Water Protection Bill of Rights" from the November 2017 ballot. *State ex rel. Flak v. Betras*, ___ Ohio St.3d ___, 2017-Ohio-8109, ___ N.E.3d ___, ¶ 16, citing *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696. In denying a writ of mandamus, the court held, as it had previously, that a county board of elections has authority, under R.C. 3501.11(K)(1), " 'to determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative.' " *Id.* at ¶ 11, quoting *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 9. The court determined that the board had not abused its discretion in exercising that authority. *Id.* at ¶ 9, 18.

**{¶ 12}** This case presents an opportunity for us to reexamine this court's prior interpretation of R.C. 3501.11(K)(1), to determine whether that interpretation is inconsistent with the separation-of-powers doctrine. I would conclude that it is and would overrule *Youngstown*, *Sensible Norwood*, and *Flak* to the extent that they construe R.C. 3501.11(K)(1) as authorizing and requiring boards of elections to determine whether a proposed measure exceeds a municipality's legislative power. I also would hold that certain provisions enacted through 2016 Sub.H.B. No. 463 ("H.B. 463") are unconstitutional to the extent that they purport to grant that authority to boards of elections.

**{¶ 13}** The Youngstown city charter provides that proposed amendments to the charter must be submitted to the city's electors "in the manner provided by the Constitution and laws of the State of Ohio." Youngstown Charter 120. Municipal electors have a constitutional right to initiate, by petition, a proposed amendment to their municipality's charter. *State ex rel. Beard v. Hardin*, ___ Ohio St.3d ___, 2018-Ohio-1286, ___ N.E.3d ___, ¶ 20 (lead opinion), citing Ohio Constitution,

Article XVIII, Sections 9 and 14. "When a sufficient number of electors sign the petition, the municipality's legislative authority, by ordinance, shall submit the proposal to the electorate." *Id.*, citing Ohio Constitution, Article XVIII, Sections 8 and 9.

{¶ 14} Relators, four Youngstown electors, argue that they have a clear right to have their proposed charter amendment placed on the ballot because their petition satisfies the signature requirement and Youngstown City Council passed an ordinance calling for placement of the measure on the ballot. They contend that R.C. 731.28 gives the board only a ministerial role, with no authority to exclude a measure from the ballot for substantive legal reasons. Also, relying on the separation-of-powers doctrine and *State ex rel. Espen v. Wood Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2017-Ohio-8223, ___ N.E.3d ___ (lead opinion), relators argue that the board lacks constitutional authority to decide substantive legal questions. They assert that recent statutory amendments enacted through H.B. 463, which purport to authorize and require boards of elections to make certain legal determinations, are unconstitutional.

{¶ 15} *Espen* does not resolve this case because the lead opinion in that case, joined by only three justices, did not articulate a holding of this court. But relators' argument that we should overrule this court's earlier caselaw and declare aspects of H.B. 463 unconstitutional for being inconsistent with the separation-of-powers doctrine is nevertheless convincing.

{¶ 16} In *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus, we identified three questions that help determine whether to overrule a prior decision: First, was the earlier decision wrongly decided at that time, or do changes in circumstances no longer justify continued adherence to the decision? Second, does the decision defy practical workability? And third, would abandoning the precedent create an undue hardship for those who have relied on it?

**{¶ 17}** First, I believe that *Youngstown*, *Sensible Norwood*, and *Flak* were wrongly decided at the time. In *Youngstown*, this court considered whether the board abused its discretion in excluding from the ballot a proposed amendment to the Youngstown city charter that would have made it unlawful within the city to extract oil and gas through hydrofracturing. 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229. In that case, the board had sought to apply *State ex rel. Morrison v. Beck Energy Corp.*, 143 Ohio St.3d 271, 2015-Ohio-485, 37 N.E.3d 128, ¶ 34 (lead opinion), which concluded that the Home Rule Amendment, Ohio Constitution, Article XVIII, Section 3, does not allow a municipality to enact an ordinance that impedes or obstructs oil-and-gas-production operations that the state has permitted under R.C. Chapter 1509. *Youngstown* at ¶ 4.

**{¶ 18}** In *Youngstown*, the court considered the extent of the board's authority to substantively review a proposed ballot measure under former R.C. 3501.11(K) (now R.C. 3501.11(K)(1)), which grants boards of elections authority to "[r]eview, examine, and certify the sufficiency and validity of petitions." The court concluded that this statutory authority "empowers a board of elections to determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative." *Youngstown* at ¶ 9. But the court held that boards of elections "do *not* have authority to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms." (Emphasis sic.) *Id*. at ¶ 11. The court explained:

> An unconstitutional amendment may be a proper item for referendum or initiative. Such an amendment becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction. Any other conclusion would authorize a board of elections to adjudicate a constitutional question and require this court to affirm its decision even if the court disagreed with the

> board's conclusion on the underlying constitutional question, so
> long as the board had not abused its discretion.

*Id.* Because the board had expressly excluded the ballot measure based on its view that the measure would be unconstitutional if enacted, the court granted a writ of mandamus compelling the board to place the measure on the ballot. *Id.* at ¶ 12.

{¶ 19} A year later, in *Sensible Norwood*, this court again considered the extent of a board of elections' authority under former R.C. 3501.11(K) to exclude a municipal initiative from the ballot. 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, at ¶ 6. *Sensible Norwood* involved a proposed municipal ordinance that, among other things, would have made the possession of marijuana a fifth-degree felony. *Id.* at ¶ 11. The court cited Article II, Section 1f of the Ohio Constitution, *id.* at ¶ 9, which reserves to municipal electors the right to submit questions by initiative petition but limits that right only to questions "municipalities may now or hereafter be authorized by law to control by legislative action." The court held that because a municipality lacks authority to define a felony, the proposed ordinance was "beyond the scope of a municipality's authority to enact." *Id.* at ¶ 10, 22. Thus, although the court did not cite *Youngstown* in *Sensible Norwood*, it applied the distinction the earlier decision had recognized—that a board of elections has authority to exclude a ballot measure based on its determination that the measure is beyond the scope of the municipality's power to enact, but it lacks authority to exclude a measure based on its determination that the measure would be unconstitutional if enacted.

{¶ 20} Through H.B. 463, effective April 6, 2017, the General Assembly enacted changes relevant to an elections board's authority and duty to review a proposed ballot measure's substantive terms.

{¶ 21} The act added R.C. 3501.11(K)(2), which provides that a board of elections shall

[e]xamine each initiative petition, or a petition filed under section 307.94 or 307.95 of the Revised Code, received by the board to determine whether the petition falls within the scope of authority to enact via initiative and whether the petition satisfies the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code.  The petition shall be invalid if any portion of the petition is not within the initiative power.

Before the amendment, as noted in *Youngstown* and *Sensible Norwood*, former R.C. 3501.11(K) simply had required a board of elections to "[r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers, and, after certification, return to the secretary of state all petitions and nomination papers that the secretary of state forwarded to the board."  2013 Am.Sub.H.B. No. 109.  H.B. 463 retained that language, recodifying it as R.C. 3501.11(K)(1).

{¶ 22} H.B. 463 also added R.C. 3501.38(M), which R.C. 3501.11(K)(2) cross-references.  Relevant here is R.C. 3501.38(M)(1)(a), which requires a board of elections, upon receiving a municipal initiative petition, to examine the petition to determine

[w]hether the petition falls within the scope of a municipal political subdivision's authority to enact via initiative, including, if applicable, the limitations placed by Sections 3 and 7 of Article XVIII of the Ohio Constitution on the authority of municipal corporations to adopt local police, sanitary, and other similar regulations as are not in conflict with general laws, and whether the petition satisfies the statutory prerequisites to place the issue on the

ballot. The petition shall be invalid if any portion of the petition is not within the initiative power.

{¶ 23} Finally, H.B. 463 amended R.C. 3501.39(A), which now provides:

[A] board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs:
* * *

(3) In the case of an initiative petition received by the board of elections, the petition falls outside the scope of authority to enact via initiative or does not satisfy the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code. The petition shall be invalid if any portion of the petition is not within the initiative power.

{¶ 24} In October 2017, we considered two cases involving municipal initiatives in which aspects of these H.B. 463 amendments were challenged as unconstitutional. First, in *Flak*, ___ Ohio St.3d ___, 2017-Ohio-8109, ___ N.E.3d ___, we considered whether the board abused its discretion in excluding from the ballot an earlier version of the Youngstown Drinking Water Protection Bill of Rights. The majority opinion in *Flak* emphasized that under the plain language of the Home Rule Amendment and Ohio Constitution, Article II, Section 1f, municipal electors' initiative power is limited only to matters that constitute permissible municipal legislative action. *Id*. at ¶ 10. The court then reaffirmed its prior holding that an elections board's statutory authority to "[r]eview, examine, and certify the sufficiency and validity of petitions," R.C. 3501.11(K)(1) (formerly R.C. 3501.11(K)), empowers an elections board " 'to determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative.' " *Id*.

at ¶ 11, quoting *Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, at ¶ 9.  The court concluded that the board did not abuse its discretion in exercising that authority because the proposal at issue would have exceeded Youngstown's legislative power by creating a new cause of action allowing citizens to enforce their rights "through nonviolent direct action or by filing suit as a private attorney general."  *Id*. at ¶ 4, 15-16.

{¶ 25} Less than two weeks later, we decided *Espen*, ___ Ohio St.3d ___, 2017-Ohio-8223, ___ N.E.3d ___, another case involving the scope of an elections board's authority to determine substantive legal questions.  In *Espen*, a board of elections voted to place a proposed city-charter amendment on the ballot and later overruled a protester's argument that the measure included provisions that exceed the municipality's power to enact.  *Id*. at ¶ 2-3, 10-12.  We denied writs of mandamus and prohibition, thus allowing the measure to remain on the ballot.  *See id*. at ¶ 25.  The lead opinion in *Espen* concluded that R.C. 3501.38(M)(1)(a) violates the separation-of-powers doctrine to the extent that it "authorizes and requires boards of elections to make substantive, preenactment legal evaluations."  *Id*. at ¶ 15.

{¶ 26} In *Youngstown*, *Sensible Norwood*, and *Flak*, this court construed R.C. 3501.11(K)(1) (formerly R.C. 3501.11(K)), which requires elections boards to "[r]eview, examine, and certify the sufficiency and validity of petitions," as authorizing elections boards to determine whether a ballot measure exceeds a municipality's legislative power.  *Flak* at ¶ 11; *Sensible Norwood*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, at ¶ 6; *Youngstown* at ¶ 9.  But those decisions do not show why the statutory language compels that conclusion.  I believe that the court's prior construction of R.C. 3501.11(K)(1) in those cases is inconsistent with the separation-of-powers doctrine.

{¶ 27} "The separation-of-powers doctrine represents the constitutional diffusion of power within our tripartite government.  The doctrine was a deliberate

design to secure liberty by simultaneously fostering autonomy and comity, as well as interdependence and independence, among the three branches." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 114. The doctrine is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 159, 503 N.E.2d 136 (1986). The separation of powers is designed to prevent a primary and intrinsic threat: the concentration of power in a single branch of government. *See The Federalist No. 47* at 313 (Cosimo Ed.2006).

{¶ 28} Relators, through their initiative petition, seek to exercise municipal legislative power. Their authority to exercise that power arises from two provisions in the Ohio Constitution: Article XVIII, Section 3 authorizes municipalities "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws," and Article II, Section 1f "reserve[s] to the people" the power to initiate measures "on all questions which * * * municipalities may now or hereafter be authorized by law to control by legislative action." As the court recognized in *Flak*, the language of Article II, Section 1f limits the permissible subject matter of a municipal initiative petition. ___ Ohio St.3d ___, 2017-Ohio-8109, ___ N.E.3d ___, at ¶ 10.

{¶ 29} The primary question here is *who decides* that a measure initiated by electors exceeds a municipality's legislative power. To answer that question, it is important first to understand the nature of the decision that was made here. In this case, the board excluded relators' measure from the ballot, concluding that it was "beyond the scope of the City of Youngstown's power" to enact legislation. In its brief, the board further explains its view that "municipalities have no authority to act in areas that are reserved to the General Assembly or to the courts" and that "[m]unicipalities may not act in areas reserved to the power and authority of the

state." The board argues, in essence, that it has authority to determine whether state law preempts local law in certain areas.

{¶ 30} Significantly, our home-rule jurisprudence has rejected the idea of general subject-area preemption. A municipality's powers under the Home Rule Amendment are the "broadest possible powers of self-government in connection with all matters which are strictly local." *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212, 80 N.E.2d 769 (1948). Municipal legislative power is limited first by other constitutional provisions, *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 541-542, 697 N.E.2d 181 (1998), and second by general state laws that conflict with local provisions, *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 31. In the absence of either a separate constitutional restriction on municipal power or a direct conflict with a general state law, a local ordinance is not preempted. *See State ex rel. Rocky Ridge Dev., L.L.C. v. Winters*, 151 Ohio St.3d 39, 2017-Ohio-7678, 85 N.E.3d 717, ¶ 13, citing *Morrison*, 143 Ohio St.3d 271, 2015-Ohio-485, 37 N.E.3d 128, at ¶ 24. Thus, in view of our home-rule jurisprudence, the H.B. 463 amendments discussed above purport to authorize elections boards to make legal determinations about subject-area preemption that even courts cannot make.

{¶ 31} In this light, it is apparent that our interpretation of R.C. 3501.11(K)(1) in *Youngstown*, *Sensible Norwood*, and *Flak* has facilitated the violation of the separation-of-powers doctrine, which is intended to uphold the "power and duty of the judiciary to determine the constitutionality and, therefore, the validity of the acts of the other branches of government," *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462, 715 N.E.2d 1062 (1999); *see also Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 117 ("the judicial power resides exclusively in the judicial branch"). By interpreting R.C. 3501.11(K)(1) as empowering elections boards to determine whether a proposed ballot measure exceeds a municipality's legislative power, this

court has authorized elections boards to make substantive, preenactment legal evaluations.

**{¶ 32}** But that is not the only separation-of-powers problem presented in this case. In addition to exercising judicial power, the board also has become involved in the legislative process. While the primary question here is *who decides* that proposed legislation exceeds municipal legislative power, the secondary question is *when* that decision is made. By making a substantive, *preenactment* legal evaluation of proposed municipal legislation, the board has interfered with the legislative process, too.

**{¶ 33}** We have long held that courts lack authority to judge the legality of proposed legislation. *See Pfeifer v. Graves*, 88 Ohio St. 473, 104 N.E. 529 (1913), paragraph five of the syllabus. Just as we cannot stop the General Assembly from considering a proposed law, we cannot allow an elections board to interfere in the legislative process initiated by the people. After all, the electorate's legislative power is more basic than the legislative power exercised by the legislative branch of government: legislative power is *reserved* to the people but *delegated* to the General Assembly and municipalities. Ohio Constitution, Article II, Sections 1 and 1f; Article XVIII, Section 3.

**{¶ 34}** "[T]he judicial function does not begin until after the legislative process is completed." *Ohio Academy of Trial Lawyers*, 86 Ohio St.3d at 462, 715 N.E.2d 1062. That is why a court may not exercise judicial power to interfere with the legislative process. An arm of the executive branch cannot be allowed to wield judicial power to interfere with the legislative process either. To be sure, this court has the ultimate authority of judicial review over the board's decision in this mandamus action. But that does not solve the separation-of-powers problem here: it only places this court in a position it should not be in—judging the legality of proposed legislation before it has been enacted.

14

**{¶ 35}** I additionally note that authorizing elections boards to make substantive, preenactment legal evaluations raises questions about the proper standard of review. We have typically deferred to elections boards' determinations absent fraud or corruption, abuse of discretion, or clear disregard of the law. *See State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9. But we have also stated that "we need accord no deference to a board of elections' interpretation of state election law." *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 30, fn. 2. If we truly do apply a deferential abuse-of-discretion standard in these cases, we are ultimately relinquishing some authority in favor of boards of elections and facilitating inconsistent results among various boards of elections.

**{¶ 36}** Therefore, I would answer the first *Galatis* question in the affirmative: *Youngstown*, *Sensible Norwood*, and *Flak* were wrongly decided to the extent that they allowed boards of elections to decide whether a proposed municipal ballot measure exceeds a municipality's legislative power.

**{¶ 37}** I would also conclude that *Youngstown*, *Sensible Norwood*, and *Flak* defy practical workability. As discussed above, in *Youngstown*, *Sensible Norwood*, and *Flak*, this court held that under R.C. 3501.11(K)(1) (formerly R.C. 3501.11(K)), elections boards have authority to decide whether a municipality lacks the power to enact a measure but not to decide whether a measure would be unconstitutional if enacted. *See, e.g.*, *Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, at ¶ 8-11. In upholding this distinction in *Flak*, the court acknowledged that

> it is sometimes difficult to distinguish between a provision that a municipality is not authorized to adopt by legislative action (something an elections board may determine * * *) and one that is

simply unconstitutional (something an elections board may not determine, per *Youngstown* * * *). But that is the line our caselaw has drawn.

*Flak*, __ Ohio St.3d __, 2017-Ohio-8109, __ N.E.3d __, at ¶ 14. I previously characterized the distinction as "unnecessarily confusing," "without meaning," and "unworkable." *State ex rel. McGinn v. Walker*, 151 Ohio St.3d 199, 2017-Ohio-7714, 87 N.E.3d 204, ¶ 34, 36 (Fischer, J., dissenting).

{¶ 38} Questions on both sides of the distinction can present home-rule issues, but there is no clear reason why elections boards have been allowed to decide questions on one side but not questions on the other. For example, in *Youngstown*, the question was whether the board could exclude a ballot measure based on its concern that the proposal was unconstitutional under *Morrison*, a case involving questions of municipal power under the Home Rule Amendment. *Youngstown* at ¶ 4. The question in *Morrison* had been whether a local ordinance conflicted with a general state law. 143 Ohio St.3d 271, 2015-Ohio-485, 37 N.E.3d 128, at ¶ 24. The court held in *Youngstown* that the board lacked authority to apply our home-rule analysis, because that is a judicial function. *Youngstown* at ¶ 11-12.

{¶ 39} That conclusion is hard to reconcile with other cases, such as *Sensible Norwood* and *Flak*, in which the elections boards framed the issue as a scope-of-municipal-authority question, *see Sensible Norwood*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, at ¶ 4; *Flak* at ¶ 7. Indeed, it is puzzling why an elections board might have authority to make legal determinations about state-law preemption (even though we have rejected the concept) but lacks authority to determine a home-rule-conflict question (even if we have decided a case directly on point).

{¶ 40} Our existing caselaw on R.C. 3501.11(K)(1) has shown itself to be unworkable in one other way: as seen in the elections boards' decisions in *Flak* and

*Espen*, it does not lead to consistent results among various county boards of elections. By leaving behind the interpretation of R.C. 3501.11(K)(1) articulated in *Youngstown*, *Sensible Norwood*, and *Flak*, this court not only would maintain the separation of powers but also would ensure greater uniformity in elections board decision-making throughout the state. Accordingly, I would answer the second *Galatis* question in the affirmative.

{¶ 41} Finally, I would answer the third *Galatis* question in the negative: there is no reason why elections boards cannot decide future cases under a more constrained scope of review without disruption or difficulty.

{¶ 42} Accordingly, I would overrule *Youngstown*, *Sensible Norwood*, and *Flak* to the extent that those decisions hold that R.C. 3501.11(K)(1) authorizes and requires elections boards to determine whether ballot measures are within the scope of a municipality's power to enact legislation. And because R.C. 3501.11(K)(2), 3501.38(M)(1)(a), and 3501.39(A)(3) track the language of this court's prior interpretation of R.C. 3501.11(K)(1), those statutes also require boards to make substantive legal determinations in violation of the separation-of-powers doctrine and are unconstitutional to that extent.

{¶ 43} In reaching this conclusion, I emphasize that this case involves an elections board's authority to make a substantive, preenactment legal determination that a proposed measure exceeds a municipality's legislative power. Because this case does not involve other types of initiative or referendum measures, there is no need to address them here, and I leave for the future any questions about elections-board review in those cases.

{¶ 44} Finally, I note that this court's judgment in this case does not validate the Youngstown Drinking Water Protection Bill of Rights. Indeed, even if adopted by Youngstown's electors, the proposal might not be constitutional or legally enforceable, and it could be beyond the scope of Youngstown's home-rule power. In my view, a county elections board lacks constitutional authority to make these

decisions. It is understandable why some may desire to keep off the ballot a proposal such as this, with its questionable constitutionality and legality, but we must be vigilant in guarding against the executive branch's encroachment on the duties and powers of other branches of government. The course I propose would prevent the concentration of unaccountable power within county boards of elections by protecting the legislative power reserved to the people and preserving judicial review.

_____

**FRENCH, J., dissenting.**

{¶ 45} Respectfully, I dissent.

{¶ 46} The question before us is whether respondents, Mahoning County Board of Elections and its members (collectively, "the board"), abused their discretion by refusing to certify the proposed charter amendment for placement on the May 8, 2018 ballot based on their determination that the amendment contains provisions that are beyond the scope of the city of Youngstown's legislative power. Plainly, the proposed amendment does contain provisions that are beyond the scope of the city's legislative power.

{¶ 47} The proposed Section 133(a) of the charter states that the city's citizens hold rights to be free from activities—including, for example, the drilling of fossil fuels—that interfere with specified rights to clean air and water. Section 133(b), if adopted, would require the city to prosecute "all violations of this Amendment by corporations." Section 133(c), if adopted, would hold any government or corporation that engaged in such activities "strictly liable for all resulting harms."

{¶ 48} This court has already determined that "a municipality is not authorized to create new causes of action." *State ex rel. Flak v. Betras*, __ Ohio St.3d __, 2017-Ohio-8109, __ N.E.3d __, ¶ 15. Because the proposed amendment

purports to create new causes of action, I would hold that the board did not abuse its discretion and would deny the writ.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Terry J. Lodge and Jensen Silvis, for relators.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Sharon K. Hackett, Linette M. Stratford, and Mark D'Apolito, Assistant Prosecuting Attorneys, for respondents.

Porter, Wright, Morris & Arthur, L.L.P., L. Bradfield Hughes, and Kathleen M. Trafford; and McTigue & Colombo, L.L.C., Donald J. McTigue, and Ben F.C. Wallace, urging denial of the writ for amici curiae Affiliated Construction Trades Ohio Foundation, Ohio Chamber of Commerce, and American Petroleum Institute.

Mangano Law Offices Co., L.P.A., Joseph J. Guarino III, and Ryan K. Hymore, urging denial of the writ for amici curiae Western Reserve Building and Construction Trades Council (Youngstown Warren Regional Chamber), Youngstown Warren Black Caucus, Community Mobilization Coalition, and Mahoning Trumbull AFL-CIO.

_____