[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Twitchell v. Saferin,* Slip Opinion No. 2018-Ohio-3829.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3829

THE STATE EX REL. TWITCHELL ET AL. *v.*

SAFERIN ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Twitchell v. Saferin,* Slip Opinion No. 2018-Ohio-3829.]**

*Mandamus—Writ of mandamus sought to compel board of elections to place a proposed charter amendment on the ballot for the November 2018 ballot—Relators failed to show that the board of elections abused its discretion in keeping the proposed amendment off the ballot—Writ denied.*

(No. 2018-1238—Submitted September 13, 2018—Decided September 21, 2018.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Bryan Twitchell, Julian C. Mack, and Sean M. Nestor, seek a writ of mandamus to compel respondent Lucas

County Board of Elections[1] to place a proposed charter amendment on the November 6, 2018 general-election ballot. For the reasons set forth below, we deny the writ.

**Background**

{¶ 2} On August 6, 2018, Twitchell, Mack, and Nestor submitted part-petitions in support of a proposed amendment to the Toledo City Charter entitled the Lake Erie Bill of Rights ("LEBOR"). The LEBOR would declare that Lake Erie and the Lake Erie watershed "possess the right to exist, flourish, and naturally evolve" and that the citizens of Toledo have a right to a clean and healthy environment, including the Lake Erie ecosystem. Section 2 would make it unlawful for a corporation or government to violate the rights secured by the LEBOR and declares that, within the city of Toledo, any corporate license or privilege that would violate these rights would be void. Section 3 would make it a crime to violate the provisions of the LEBOR, would allow the city of Toledo, or any resident, to "enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas," and would recognize the right of the Lake Erie ecosystem itself to enforce its rights in an action prosecuted by the city or any resident of the city. Finally, Section 4 purports to nullify any state laws or agency rules that conflict with the provisions of the LEBOR.

{¶ 3} The Lucas County Board of Elections verified a sufficient number of petition signatures to qualify the measure for the ballot. However, on August 28, 2018, the board voted 4-0 to refuse to place the charter amendment on the ballot on the ground that it contained provisions that are beyond the authority of the city to enact. Specifically, the board followed the recommendation of its legal counsel to reject the petition on the grounds that (1) it creates a new cause of action and (2) it confers jurisdiction on the common pleas court to hear the new cause of action.

---

[1] Individual members of the board, Dr. Bruce Saferin, Brenda Hill, Joshua Hughes, and David Karmol, in their official capacities, were also named as respondents.

**{¶ 4}** On August 30, Twitchell, Mack, and Nestor filed the present expedited election complaint. The parties have filed briefs and evidence in accordance with the calendar for expedited election cases in S.Ct.Prac.R. 12.08, and we have received two amicus briefs in support of respondents.

### Analysis

**{¶ 5}** To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide that relief, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. To satisfy the first two requirements, a relator must show that the respondent engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9. Because there is no allegation of fraud or corruption in this case, Twitchell, Mack, and Nestor must show that the board abused its discretion or disregarded the law when it rejected the petition.

**{¶ 6}** Twitchell, Mack, and Nestor have not shown that the elections board abused its discretion in keeping the LEBOR off the ballot. The elections board relied on this court's decision in *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, which held that elections boards are authorized " 'to determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative,' " *id*. at ¶ 11, quoting *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 9. We do not find an abuse of discretion or disregard of the law in the election board's reliance on *Flak* given that *Flak* also involved proposed amendments to a city charter. "County boards of elections are of statutory creation, and the members thereof in the performance of their duties must comply with applicable statutory requirements." *State ex rel. Babcock v. Perkins*, 165 Ohio St.

185, 187, 134 N.E.2d 839 (1956). It was not unreasonable for the elections board to look to *Flak* for guidance on its statutory duties.

{¶ 7} Twitchell, Mack, and Nestor argue that the elections board should have relied on this court's decision in *State ex rel. Espen v. Wood Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2017-Ohio-8223, ___ N.E.3d ___. But that case did not result in a court majority. Thus, the elections board did not improperly disregard *Espen*.

{¶ 8} Twitchell, Mack, and Nestor also argue that the authority granted to elections boards in R.C. 3501.11(K)(2), adopted in 2016 Sub.H.B. No. 463 ("H.B. 463") is unconstitutional because it violates either the doctrine of separation of powers or the single-subject rule. But as we have observed in other recent decisions, we need not reach these issues because we can decide this case under pre-H.B. 463 caselaw. *See Flak*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, at ¶ 17; *State ex rel. Bolzenius v. Preisse*, ___ Ohio St.3d ___, 2018-Ohio-____, 333 N.E.3d ____ .

{¶ 9} Because Twitchell, Mack, and Nestor have not demonstrated that the board of elections abused its discretion when it relied on *Flak* to deny the request to place the LEBOR charter amendments on the ballot, we deny the writ.

Writ denied.

O'CONNOR, C.J., and FRENCH and DEGENARO, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion.

KENNEDY, J., concurs in judgment only, with an opinion joined by O'DONNELL and DEWINE, JJ.

O'DONNELL, J., joins Justice Kennedy's opinion and recognizes Justice Fischer's position that portions of H.B. 463 are unconstitutional, but finds it unnecessary to reach that issue in this case.

FISCHER, J., dissents, with an opinion.

_____

**O'CONNOR, C.J., concurring.**

{¶ 10} I concur with the per curiam opinion that the Lucas County Board of Elections did not abuse its discretion in refusing to place the charter amendment on the ballot and therefore relators, Bryan Twitchell, Julian C. Mack, and Sean M. Nestor, have failed to establish that they are entitled to a writ of mandamus. I write separately to address the impropriety of reaching the issues raised by the opinion concurring in judgment only.

{¶ 11} "While there may be exceptions, it is not generally the proper role of this court to develop a party's arguments." *In re Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 19. Indeed, the opinion concurring in judgment only would not only rewrite significant constitutional provisions, it would sua sponte declare portions of the Toledo city charter to be in conflict with the Ohio Constitution, all without the slightest input from the parties. We should adhere to this court's long-standing policy not to address issues not raised by the parties. *Sizemore v. Smith*, 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2. We have recognized that "justice is far better served" when we have the benefit of the parties' briefing and arguments before we make a final determination. *Id.*; *see also Apple Group, Ltd. v. Granger Twp. Bd. of Zoning Appeals*, 144 Ohio St.3d 188, 2015-Ohio-2343, 41 N.E.3d 1185, ¶ 52 (Kennedy, J., dissenting) (critiquing the majority opinion's reliance in that case on an issue that was not appealed to this court, that "the parties did not brief or argue," and that was decided "without relying on experts or authoritative statements and without considering the unique needs" of the parties).

{¶ 12} As recently as last week, this court denied a writ of mandamus by relying, in part, on *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329. Today, the opinion concurring in judgment only—which is advanced by justices who concurred in the decision in *Flak*—sua sponte concludes that our prior decisions were in error. But nothing has changed in the short time

since *Flak* was announced; not the relevant statutes or constitutional provisions, not the parties' arguments, and not the makeup of this court. To so quickly abandon our prior case law without the benefit of briefing by the parties, as the opinion concurring in judgment only suggests that we do, would leave the law vulnerable to the whims of those sitting on the bench, rather than moored to the principled and disciplined approach that is the cornerstone of an independent judiciary.

{¶ 13} That is not to say that this court should be so tied to precedent that it would reject an opportunity to correct an error. But it is a frivolous use of judicial authority to sua sponte abandon our precedent, and act as both advocate and arbiter without the input of the parties, particularly in the context of expedited election cases, which involve such critical issues as the power reserved to the people by our state constitution to participate in their government.

{¶ 14} Indeed, the opinion concurring in judgment only raises more questions than it answers in its effort to sua sponte alter the court's jurisprudence in this line of election cases. For example, it assumes that a proposed charter amendment initiated by the voters is not an "initiative" at all, that the voters' power to amend a charter arises exclusively from Article XVIII, Sections 7, 8, and 9 of the Ohio Constitution, that Article II, Section 1f of the Ohio Constitution has no application to a proposed charter amendment initiated by the people, and that a board of elections' duties are different when presented with a municipal-charter amendment than when it is presented with other voter-initiated efforts. But this argument implicates many legal conclusions, including that Article XVIII is the *exclusive* provision under which charter amendments are governed. And it requires interpreting the meaning of the term "initiative" to exclude voter-initiated efforts to amend a municipal charter. Whether these conclusions are clear from the language of the relevant constitutional provisions is not a question before us nor one that the parties have briefed.

**{¶ 15}** Additionally, the opinion concurring in judgment only concludes that the Ohio Constitution requires the Toledo city council to approve an ordinance placing the initiated charter amendment on the ballot and that absent such an ordinance, relators' complaint for a writ of mandamus against the board of elections is premature. The opinion then goes so far as to conclude that the Toledo city charter is inconsistent with the Ohio Constitution. But these arguments have not been presented to this court. And the question whether the process of submitting a voter-initiated charter amendment to the electors arises *exclusively* under Article XVIII of the Ohio Constitution has not been presented to this court nor briefed by the parties. For example, Article XVIII, Section 9, requires a "legislative authority" (in this case, city council) to submit a qualifying initiative to the ballot, but it does not mandate *how* that is to be accomplished (by passage of an ordinance, certification by the clerk of a city council, or by another method).

**{¶ 16}** It is the court's role to act as an arbiter, not an advocate. Here, the opinion concurring in judgment only exceeds the bounds of our judicial authority. We should treat such attempt with circumspection.

_____

**KENNEDY, J., concurring in judgment only.**

**{¶ 17}** I agree with the majority that relators, Bryan Twitchell, Julian C. Mack, and Sean M. Nestor, have failed to establish that they have a clear legal right to issuance of a writ of mandamus against the board of elections. I write separately, however, to urge that we clear up the confusion created by our recent caselaw, which has begun treating a petition to amend a municipal charter pursuant to Article XVIII, Section 9 of the Ohio Constitution as the equivalent of an initiative petition to enact an ordinance pursuant to Article II, Section 1f of the Ohio Constitution. However, the right of initiative is separate from the right of the people of a municipality to frame a form of government. Until recently, we had recognized that Article XVIII, Section 9 sets forth the specific procedure for amending a

municipal charter and requires a municipality's legislative body to pass an ordinance placing a proposed charter amendment on the ballot when its proponents present a sufficient petition. Because there is no evidence here that the Toledo city council passed such an ordinance, the Lucas County Board of Elections ultimately was correct in refusing to place the charter amendment on the ballot for the November 2018 election. Therefore, I concur in the judgment denying the writ.

*Power of Initiative and Referendum*

{¶ 18} Article II, Section 1f of the Ohio Constitution, adopted in 1912, reserves to the people of a municipality the power of initiative and referendum: "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law." Our caselaw construing this amendment has long held that a board of elections has authority to deny ballot access when an initiative petition "does not contain any question which a municipality is authorized by law to control by legislative action." *State ex rel. Rhodes v. Lake Cty. Bd. of Elections*, 12 Ohio St.2d 4, 230 N.E.2d 347 (1967); *accord State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, ¶ 9; *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 34; *State ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections*, 80 Ohio St.3d 165, 168, 685 N.E.2d 224 (1997).

{¶ 19} In *Sensible Norwood*, the board of elections refused to place on the ballot a proposed municipal ordinance that would decriminalize marijuana and hashish in the city of Norwood. We noted that a municipality has authority to define misdemeanor offenses but that the power to define and prescribe punishment for felonies is vested in the General Assembly. *Id.* at ¶ 10. And because the power to designate felonies is not a matter that municipalities are "authorized by law to

control by legislative action," Article II, Section 1f of the Ohio Constitution, the supporters of the proposed ordinance did not have the right to have the measure placed on the ballot. *Id.* at ¶ 12.

{¶ 20} The power of a municipality or of the people of a municipality to adopt and amend a municipal charter, however, flows from a separate constitutional provision.

*Power to Adopt or Amend a Municipal Charter*

{¶ 21} Article XVIII, Section 7 of the Ohio Constitution was also adopted in 1912. It authorizes a municipality to "frame and adopt or amend" a charter form of government. Section 9 of Article XVIII specifies the procedure for placing a proposed amendment to the charter on the ballot:

> Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority. The submission of proposed amendments to the electors shall be governed by the requirements of section 8 as to the submission of the question of choosing a charter commission * * *. If any such amendment is approved by a majority of the electors voting thereon, it shall become a part of the charter of the municipality.

In turn, Article XVIII, Section 8, states, "The legislative authority of any city or village may by a two-thirds vote of its members, and upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, 'Shall a commission be chosen to frame a charter.' "

{¶ 22} We have therefore explained that " 'Section 9 of Article XVIII, which incorporates the requirements of Section 8, allows, and on petition by ten percent of the electors, *requires*, the legislative authority of any city, *e.g.*, city council, to "forthwith" authorize by ordinance an election on the charter amendment issue.' (Emphasis sic.)" *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 23, quoting *State ex rel. Commt. for Charter Amendment Petition v. Avon*, 81 Ohio St.3d 590, 592, 693 N.E.2d 205 (1998). "The 'manifest object' of Section 9 of Article XVIII 'is to provide the procedure for the submission of a charter amendment to electors' and these 'requirements are clear and complete, and are not to be added to or subtracted from.' " *Id*. at ¶ 31, quoting *Billington v. Cotner,* 25 Ohio St.2d 140, 146, 267 N.E.2d 410 (1971).

{¶ 23} We have held that in placing a proposed amendment to a municipal charter on the ballot, "[the] board of elections has nothing but a ministerial role under the Constitution." *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections*, 67 Ohio St.3d 334, 337, 617 N.E.2d 1120 (1993). And "[s]ince the Constitution requires that the admission [sic, submission] of the charter amendment initiative be made by the legislature, it follows that the legislature need not make the submission unless satisfied of the sufficiency of the petitions and that all statutory requirements are fairly met." *Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 55, 641 N.E.2d 1075 (1994). " 'This function being reposed by the Constitution in the legislative branch of the government, it does not lie in the power of the people of the municipality to transfer it to an arm of the executive branch, viz. the board of elections.' " *Semik* at 336, quoting *State ex rel. Hinchcliffe v. Gibbons*, 116 Ohio St. 390, 395, 156 N.E. 455 (1927). For this reason, "the board cannot be granted decisive authority in this area." *Id*. at 337.

{¶ 24} Our caselaw had been consistent on this point since we decided *Hinchcliffe* in 1927. Recently, however, in reviewing mandamus actions involving

ordinances to amend municipal charters, we began applying our caselaw construing the power of initiative and referendum as if Article II, Section 1f were the source of the authority to amend a municipal charter.

{¶ 25} In *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, we addressed the board of elections' authority to review an ordinance proposing a charter amendment, but we did not even mention Article XVIII, Sections 7, 8, and 9, or any of our prior caselaw construing those provisions. We therefore did not recognize that the authority to amend a municipal charter arises from a constitutional provision separate from the right of initiative. Even though an *ordinance* had instructed the board to place the charter amendment on the ballot, we relied on R.C. 3501.11(K) and held that the board had authority to review a charter-amendment *petition* and "determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative." *Id*. at ¶ 9. However, our error did not affect the outcome of the case; we ordered the charter amendment on the ballot, explaining that "boards of elections do *not* have authority to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms. An unconstitutional amendment may be a proper item for referendum or initiative." (Emphasis sic.) *Id.* at ¶ 11.

{¶ 26} We continued our error in *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, in which we considered whether the Mahoning County Board of Elections had a clear legal duty to place two proposed charter amendments on the ballot. The Youngstown city council had unanimously passed ordinances instructing the board to place the proposed amendments on the ballot, but the board refused to do so on the grounds that the amendments contained provisions that exceeded the scope of the city's power to enact by initiative. *Id*. at ¶ 7. In reviewing a mandamus action challenging that decision, we again relied on Article II, Section 1f of the Ohio Constitution without mentioning Article XVIII, Sections 7, 8, and 9. The city had enacted ordinances placing charter amendments

on the ballot on authority of Article XVIII, Section 9, not Article II, Section 1f, but we held that under R.C. 3501.11(K)(1), the board had authority to review the sufficiency and validity of the charter-amendment petitions and determine whether the charter amendments fell within the scope of the power to initiate legislation. *Flak* at ¶ 11. Then, we compounded the error by relying on *Sensible Norwood*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696—a case involving an initiative petition for a proposed municipal ordinance, not an ordinance proposing to amend a charter—and concluded that the board of elections properly rejected the petitions because the proposed charter amendments exceeded the municipality's legislative power by purporting to create a cause of action. *Id*. at ¶ 15-16.

{¶ 27} We relied on our faulty reasoning in *Flak* in *State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2018-Ohio-1602, ___ N.E.3d ___. However, our discussion of *Flak* did not affect the outcome in *Khumprakob*, because we held that the board of elections abused its discretion in finding that the amendment exceeded the city of Youngstown's legislative power. We nonetheless assumed that a charter amendment involves the power to initiate legislation controlled by Article II, Section 1f of the Ohio Constitution rather than the power to amend a charter form of municipal government controlled by Article XVIII, Section 9 of the Ohio Constitution.

{¶ 28} The majority today apparently recognizes that our reasoning in *Flak* is flawed, because the majority does not actually apply that decision to this case but rather concludes that "[i]t was not unreasonable for the elections board to look to *Flak* for guidance on its statutory duties," majority opinion at ¶ 6. But the board of elections had nothing but a ministerial role in placing the proposed charter amendment on the ballot. *Semik*, 67 Ohio St.3d at 337, 617 N.E.2d 1120. It therefore had no discretion to exercise, and the reasonableness of its reliance on *Flak* is irrelevant. And more fundamentally, we should not abdicate the judicial responsibility to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177, 2

L.Ed. 60 (1803), and permit the board of elections to decide ballot access by applying whichever of our conflicting lines of authority supports the desired result.

**{¶ 29}** Here, the board of elections concluded that the proposed charter amendment exceeds the scope of the municipality's legislative authority to enact through initiative pursuant to Article II, Section 1f. But to reach that conclusion, the board had to ignore language on the petition citing "Constitution of Ohio, Art. XVIII, Section 9 and 14." The Ohio secretary of state used this language in Form 6-B, the petition for submission of a proposed charter amendment. (The secretary provides a separate Form 6-I for initiative petitions). And the board of elections did not follow the secretary of state's Ohio Ballot Questions and Issues Handbook 10-6 (2018), available at *https://www.sos.state.oh.us/globalassets/elections /eoresources/general/questionsandissues.pdf* (accessed Sept. 20, 2018), a guide for the boards of elections that states:

> The authority and procedure for approving an amendment to a municipal charter are found in Article XVIII, Section 9 of the Ohio Constitution. * * *
>
> An amendment to a charter may be submitted to the electors by one of the two following methods:
>
> i. Two-thirds vote of the legislative authority of the municipality.
>
> ii. A petition containing the full text of the proposed amendment and signed by 10 percent of the electors of the municipality. The filing of a valid and sufficient petition requires the legislative authority to pass an ordinance ordering the board of elections to submit the amendment to the electors.
>
> The municipal legislative authority determines the sufficiency and validity of a petition to amend a charter. The board

of elections' initial role in reviewing the petition is strictly ministerial; i.e., determining the sufficiency and validity of the signatures and reporting its findings to the legislative authority.

(Footnotes omitted.)

**{¶ 30}** A charter amendment is not an exercise of the people's power to initiate legislation—i.e., to enact an ordinance—but rather is the municipality's authority to establish and amend its form of government through the action of the municipality's legislative branch. Accordingly, I would apply Article XVIII, Sections 7, 8, and 9, and caselaw construing those provisions in cases in which a city council enacts an ordinance ordering the placement of a proposed amendment to the municipality's charter on a ballot and would not treat an ordinance ordering the placement of a proposed amendment on a ballot the same as an initiative petition seeking to enact an ordinance.

**{¶ 31}** The concurring opinion asserts that this opinion "assumes that a proposed charter amendment initiated by the voters is not an 'initiative' at all, that the voters' power to amend a charter arises exclusively from Article XVIII, Sections 7, 8 and 9, of the Ohio Constitution, that Article II, Section 1f, of the Ohio Constitution has no application to a proposed charter amendment initiated by the people, and that a board of elections' duties are different when presented with a municipal-charter amendment than when it is presented with other voter-initiated efforts." Concurring opinion at ¶ 14. Of course, had the framers intended for the people of a municipality to adopt and amend a municipal charter through the right of initiative reserved by Article II, Section 1f, there would be no reason to adopt procedures for amending a charter in Article XVIII, Sections 7, 8 and 9.

**{¶ 32}** It is a general rule of constitutional interpretation that when a specific constitutional provision applies, it controls over a more general provision. *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 26;

*Sacramento Cty. v. Lewis*, 523 U.S. 833, 844, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Article XVIII, Sections 7, 8, and 9 provide specific procedures for amending a charter, while Article II, Section 1f does not. We should be hesitant to adopt an analysis that would allow a party to evade the procedure expressly provided by the Constitution for amending a municipal charter simply by characterizing the petition as seeking an initiative rather than a petition for a charter amendment.

{¶ **33**} The concurring opinion also asserts that "Article XVIII, Section 9 requires a 'legislative authority' (in this case, city council) to submit a qualifying initiative to the ballot, but it does not mandate *how* that is to be accomplished (by passage of an ordinance, certification by the clerk of city council, or by another method)." (Emphasis sic.) Concurring opinion at ¶ 15. That claim disregards the plain language of Article XVIII, Section 9, expressly incorporating Article XVIII, Section 8, and requiring the legislative authority of the municipality to "provide by ordinance" for the submission of the charter amendment to the people.

{¶ **34**} And it is peculiar that in writing to uphold the importance of stare decisis, the concurring opinion is so willing to abandon our caselaw recognizing that presentation of a sufficient petition requires the legislative authority of the municipality to pass an ordinance placing the charter amendment on the ballot. *See, e.g., Commt. for the Charter Amendment,* 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 23; *Commt. for Charter Amendment Petition*, 81 Ohio St.3d at 592, 693 N.E.2d 205; *Semik*, 67 Ohio St.3d at 337, 617 N.E.2d 1120; *State ex rel. Blackwell v. Bachrach*, 166 Ohio St. 301, 306, 143 N.E.2d 127 (1957). In fact, our recent decision in *State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, granted a writ of mandamus to compel a city council *to pass an ordinance* placing a charter amendment on the ballot.

**{¶ 35}** Last, I recognize that it would be helpful to order supplemental briefing on these questions, but the shortened timeline of an expedited election action make that impractical if not impossible—the deadline for preparing absentee ballots as required by federal law, 52 U.S.C. 20302, is imminent. *See* R.C. 3511.04(B). In these circumstances, our prudential policy against addressing arguments not raised by the parties is not a barrier to addressing and remedying a clear mistake before it is repeated again. The alternative is to stay silent and allow the board of elections to continue to deny ballot access based on this court's erroneous statement of law. In the words of Chief Justice Thomas J. Moyer, writing for the court in *State ex rel. Huebner v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 385, 662 N.E.2d 339 (1996), such an interpretation would not "foster[ ] the goal of providing citizens with access to the ballot, a foundation of our democracy."

**{¶ 36}** Despite the majority's misapplication of Article II, Section 1f of the Ohio Constitution, here the board of elections properly refused to place the charter amendment on the ballot, because the Toledo city council had not passed an ordinance placing it on the ballot. Rather, Toledo's clerk of council submitted the petition—not an ordinance—directly to the board of elections. This error resulted from the clerk's attempt to comply with the Toledo City Charter, Chapter 1, Section 5, which provides:

> Any amendment to this Charter may be submitted to the electors of the City for adoption by resolution of the Council, two-thirds of the members thereof concurring, and shall be submitted when a petition is filed with the Clerk of the Council setting forth the proposed amendment and signed by not less than ten percent of the electors. * * * It shall be the duty of the Clerk to notify the election authorities of the adoption by the Council of a resolution for submission of a proposed amendment, or of his or her

16

> determination that a sufficient petition for submission has been filed with him or her; and the Clerk shall request the election authorities to provide for an election as aforesaid.

The charter calls for the council to pass a "resolution" to amend the charter on its own initiative. However, when petitions are filed seeking an amendment, the charter requires the clerk to submit the amendment to the board of elections if the clerk finds the petitions to be sufficient—without council passing an ordinance instructing the board to place the charter amendment on the ballot. The Toledo City Charter is therefore inconsistent with the procedure required by Article XVIII, Sections 8 and 9. *See Commt. for the Charter Amendment*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 32.

{¶ 37} Mandamus will not lie in this case, because until the Toledo City Council passes an ordinance, the board of elections has no duty to place the charter amendment on the ballot. *State ex rel. Beard v. Hardin*, ___ Ohio St.3d ___, 2018-Ohio-1286, ___ N.E.3d ___, ¶ 34  (lead opinion). "Because the council has not passed [an ordinance approving the placement of the amendment on the ballot], relators have no claim against the board of elections." *Id.*

{¶ 38} Moreover, in contrast to the dissenting opinion's argument that this court should address whether 2016 Sub.H.B. No. 463 ("H.B. 463"), which amended R.C. 3501.11 to require a board of elections to examine an initiative petition, violates the separation-of-powers doctrine, the plain language of Article XVIII, Sections 8 and 9 of the Ohio Constitution is controlling, and there is no need to consider whether the amendments enacted by H.B. 463 apply.

*Conclusion*

{¶ 39} "[T]he public is not under the illusion that we are infallible. [There is] little harm in admitting that we made a mistake * * *." *Dickerson v. United States*, 530 U.S. 428, 464, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (Scalia, J.,

dissenting). But recognizing an error in a prior decision is only the first step; sooner or later, we also have to rectify it. As United States Supreme Court Justice Antonin Scalia explained,

the respect accorded prior decisions increases, rather than decreases, with their antiquity, as the society adjusts itself to their existence, and the surrounding law becomes premised upon their validity. The freshness of error not only deprives it of the respect to which long-established practice is entitled, but also counsels that the opportunity of correction be seized at once, before state and federal laws and practices have been adjusted to embody it.

*South Carolina v. Gathers*, 490 U.S. 805, 824, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) (Scalia, J., dissenting). We therefore should overrule bad precedent at the earliest opportunity to avoid detrimental reliance on it. This is especially true when the bad precedent resulted from inadvertence and runs counter to the plain language of the Ohio Constitution and almost a century of settled caselaw construing it.

{¶ 40} This case brings us to that crossroads, because it is now apparent that there are two irreconcilable lines of case authority interpreting the Ohio Constitution's procedure for amending a municipal city charter. One line of authority dates from 1927 and holds that Article XVIII, Section 9 of the Ohio Constitution governs the amendment of a municipal charter. The second line of authority began in 2015 and applies caselaw construing Article II, Section 1f of the Ohio Constitution, pertaining to the right of initiative, as if *that* provision were the constitutional authority for amending a charter. Rather than resolve the confusion in our law, the majority preserves it for another day.

{¶ 41} Contrary to statements in our recent decisions, Article XVIII, Section 9 of the Ohio Constitution—and not Article II, Section 1f—sets forth the

specific procedure for amending a municipal charter and requires a municipality's legislative body, upon submission of a sufficient petition, to pass an ordinance in order to place a proposed charter amendment on the ballot. Because there is no evidence here that the Toledo city council passed such an ordinance, the Lucas County Board of Elections was ultimately correct in refusing to place the charter amendment on the ballot for the November 2018 election, and relators have failed to establish that they have a clear legal right to issuance of a writ of mandamus against the board of elections.

{¶ 42} For these reasons, I concur in judgment only.

O'DONNELL and DEWINE, JJ., concur in the foregoing opinion.

_____

**FISCHER, J., dissenting.**

{¶ 43} I respectfully dissent and would hold that portions of 2016 Sub.H.B. No. 463 ("H.B. 463") are unconstitutional for the reasons stated in my separate opinion in *State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2018-Ohio-1602, ___ N.E.3d ____, ¶ 42 (Fischer, J., concurring in judgment only).

### I.     The Constitutionality of R.C. 3501.11(K) Is Ripe for Review

{¶ 44} As I have previously discussed, I believe that R.C. 3501.11(K) contains language raising separation-of-powers concerns. *See, e.g.*, *State ex rel. Bolzenius v. Preisse*, ___ Ohio St.3d ___, 2018-Ohio-3708, ___ N.E.3d ____, ¶ 24 (Fischer, J., dissenting). In the instant case, the parties directly argue the constitutionality of R.C. 3501.11(K)(1), and it is high time that this court addresses those arguments, which it has failed to do on multiple occasions. *See State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, ¶ 17 ("Because the matter may be properly resolved under our pre–H.B. 463 caselaw, we leave consideration of the constitutionality of the new enactment for another day"); *Bolzenius* at ¶ 14 ("Because we have already found that the board had the

authority to exclude the proposal from the ballot under our pre–H.B. 463 caselaw, we need not reach the constitutionality of H.B. 463 in this case").

## II. The Court Could Interpret R.C. 3501.11(K) in a Manner that Does Not Violate the Separation-of-Powers Doctrine

{¶ 45} In this case, relators, Bryan Twitchell, Julian C. Mack, and Sean M. Nestor, argue that the Board of Election's action violates the separation-of-powers doctrine and that this court cannot allow the General Assembly to transfer a "take-no-prisoners veto power" from the judicial branch to the executive branch.

{¶ 46} "Courts must liberally construe statutes in order to avoid constitutional infirmities." *State ex rel. Thompson v. Spon*, 83 Ohio St.3d 551, 555, 700 N.E.2d 1281 (1998), citing *State ex rel. McGinty v. Cleveland City School Dist. Bd. of Edn.*, 81 Ohio St.3d 283, 288, 690 N.E.2d 1273 (1998). Theoretically, the court need not go so far as to find the statute unconstitutional. It is possible that R.C. 3501.11(K) could be found constitutional by applying a nondeferential standard of review to those determinations made pursuant to the statute by the board of elections. We already use a nondeferential standard in other areas of law when analyzing a purely legal question.

{¶ 47} In a mandamus case such as this, we review an election official's decision to exclude a ballot measure from the ballot for an abuse of discretion. *See State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419; *State ex rel. Coover v. Husted*, 148 Ohio St.3d 332, 2016-Ohio-5794, 70 N.E.3d 587. In this case, the majority determines that the board of elections did not abuse its discretion when it rejected the ballot measure on the grounds that the proposed amendment to the city charter created a new cause of action and conferred jurisdiction on the common pleas court to hear that new cause of action. We have long held, however, that we review questions of law de novo. *See In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3.

20

**{¶ 48}** We have applied this de novo standard of review in cases in which we review legal determinations made by executive agencies. For example, in cases in which we review decisions made by the Board of Tax Appeals ("BTA"), we consider legal issues de novo. *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004, ¶ 10-11. We "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local Schools Dist. Bd. of Edn. v. Zaino,* 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001). In these and many similar cases, we have implicitly accepted that the BTA's initial determination of a purely legal question does not violate the separation-of-powers doctrine.

**{¶ 49}** I accordingly encourage the court to consider whether we should apply a de novo standard of review when reviewing a legal determination made by a board of elections pursuant to R.C. 3501.11(K).

### III.   Conclusion

**{¶ 50}** Thus, although I dissent in this case, I believe there may be common ground upon which this court can come to a consensus in the future regarding the constitutional issue that is presented, but left unresolved, in this case.

---

Terry J. Lodge and Jensen Silvis, for relators.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borell, Kevin A. Pituch, and Evy M. Jarrett, Assistant Prosecuting Attorneys, for respondents.

Chad A. Endsley, Leah F. Curtis, and Amy M. Milam, urging denial of the writ for amici curiae Ohio Farm Bureau Federation and Lucas County Farm Bureau.

Barrett, Easterday, Cunningham & Eselgroth, L.L.P., David C. Barrett Jr., Carolyn Eselgroth, and Amanda Stacy Hartman, urging denial of the writ for amici curiae Ohio Soybean Association, Ohio Corn & Wheat Growers Association, Ohio Poultry Association, Ohio Cattlemen's Association, Ohio Dairy Producers

Association, Ohio Pork Council, Ohio Sheep Improvement Association, and Ohio Agribusiness Association.

Porter, Wright, Morris & Arthur, L.L.P., and L. Bradfield Hughes, urging denial of the writ for amici curiae Affiliated Construction Trades Ohio Foundation, Ohio Chamber of Commerce, Ohio Oil and Gas Association, Ohio Chemistry Technology Council, and American Petroleum Institute.

_____