Fischer, J., dissenting.
{¶ 26} I respectfully dissent. I would address the constitutional issue actually raised, briefed, and argued by the parties in this case, and I would hold that a limited portion of 2016 Sub.H.B. No. 463 ("H.B. 463") is unconstitutional for the reasons stated in my separate opinion in *1173 State ex rel. Flak v. Betras , 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, ¶ 54 (Fischer, J., dissenting).
{¶ 27} The majority opinion may in many ways undermine the rights that are guaranteed to Ohioans under their own state Constitution. First, the majority opinion applies a provision of the Ohio Constitution that may address only referenda in municipalities (and thus is potentially irrelevant to this case) to, in effect, eliminate the right of initiative for citizens of a municipality, even though that right is specifically reserved to the electors. Second, the majority opinion further confuses the law involving Ohioans' state constitutional right of initiative and the roles of and relationships among boards of elections, municipalities, and electors. Third, the majority opinion could undermine state constitutional provisions invoking separation of powers and judicial review and authority, as well as free speech. And it is troubling that the majority opinion might undermine all these constitutional protections for the citizens of Ohio by using a legal theory that was never briefed, never argued, and never even mentioned in any of the filings in this case.
{¶ 28} This court has previously sua sponte ordered additional briefing on an issue that came to light after the initial briefing was complete. See, e.g. , Dodd v. Croskey , 140 Ohio St.3d 1406, 2014-Ohio-3708, 14 N.E.3d 1052. The court could order additional briefing on the issue, which is raised for the first time in the majority opinion. The court could also set an expedited timeline for such briefing. The court has not done so. The majority opinion thus decides an issue of great constitutional importance without the benefit of briefing or argument. The majority actively takes an unrequested action that could well deny the people of Ohio some of their unique and coveted state constitutional rights.
*505 I. The Proposed Amendment Was Properly Submitted to the Board of Elections
{¶ 29} The issue whether Article XVIII, Sections 8 and 9 of the Ohio Constitution control in this case has not been raised or briefed by the parties. In fact, those sections of the Ohio Constitution are not mentioned in any of the briefs or filings. Because issues regarding Article XVIII, Sections 8 and 9 of the Ohio Constitution were not raised or briefed, we should be hesitant to decide this case based on those sections, for justice is far better served when we have had the benefit of briefing and argument before we make a final determination. See State v. Quarterman , 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19 ; see also Apple Group, Ltd. v. Granger Twp. Bd. of Zoning Appeals , 144 Ohio St.3d 188, 2015-Ohio-2343, 41 N.E.3d 1185, ¶ 52 (Kennedy, J., dissenting). Furthermore, " 'it is not generally the proper role of this court to develop a party's arguments.' " Snodgrass v. Testa , 145 Ohio St.3d 418, 2015-Ohio-5364, 50 N.E.3d 475, ¶ 31, quoting In re Application of Columbus S. Power Co ., 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 19. As more fully explained below, by deciding this case on a question that was not briefed, the majority opinion creates analytical problems in resolving the case. Hence, the court should not countenance this action.
{¶ 30} Assuming arguendo that a question regarding Article XVIII, Sections 8 and 9 is properly before us, my review of those provisions casts significant doubt upon the majority opinion's conclusion. Article II, Section 1f of the Ohio Constitution reserves the initiative and referendum powers to the people of each municipality on questions within the legislative control of municipalities. The Ohio Constitution clearly distinguishes the power of initiative *1174 from the power of referendum. See Article II, Section 1g. The initiative power-the "first" power reserved to the people in Article II-is the power of the people to propose a constitutional amendment or law directly to the electorate. See Article II, Sections 1a and 1b, Ohio Constitution. The referendum power-the "second" power reserved to the people in Article II-is the power of the people to order that a law passed by a legislative body be submitted for electors' approval or rejection. See Article II, Section 1c, Ohio Constitution.
{¶ 31} In expressly reserving both the power of initiative and the power of referendum to the people of each municipality, the Ohio Constitution emphasizes that they are distinct actions. But Article II, Section 1f does not limit its reservation of the power of initiative solely to the power to enact municipal ordinances. Thus, unlike the majority opinion, I read Article II, Section 1f as applying to all questions that may be controlled by legislative action, including the ability to propose charter amendments.
*506 {¶ 32} The distinction between the power of initiative and the power of referendum is important to keep in mind when reading Article XVIII, Sections 8 and 9.
{¶ 33} Given the lack of briefing on the question of how to interpret the two sections, we are unable to give full and fair consideration to how they may interact. However, my analysis of the issue reveals more than one plausible reading of those provisions. And the majority opinion's interpretation of those sections could effectively eliminate the power of the people to amend municipal charters via initiative.
A. Article XVIII, Section 9 May Apply Only to Referenda
{¶ 34} I disagree with the majority opinion's conclusion that there is only one plausible reading of Article XVIII, Section 9. The majority opinion relies on decisions in which this court has interpreted Article XVIII, Section 9 to provide two methods to put a proposed charter amendment on the ballot; however, I do not find these cases to be either conclusive or persuasive.
{¶ 35} Article XVIII, Section 9 provides that proposed charter amendments "may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and , upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority." (Emphasis added.) If the word "and" in this provision is interpreted literally, the process for amending a municipal charter set forth in Section 9 would always be premised upon legislative action. Under this literal reading, in order for a proposed amendment to a charter to be submitted to the electorate, the amendment first would need to be approved by a two-thirds vote of the members of the municipality's legislative authority. Only if the legislative authority approved the amendment by a two-thirds majority would it be submitted to the electors, upon 10 percent of the electors signing petitions to put the amendment on the ballot.
{¶ 36} But this literal interpretation of Section 9 as allowing the voters to accept or reject the proposed amendment only after the legislative authority has already acted would create only the right to referendum. Indeed, Section 9 specifically describes this process of approval as a "referendum vote." Article XVIII, Section 9, Ohio Constitution ("A copy of said charter or any amendment thereto shall be certified to the secretary of state, within thirty days after adoption by a referendum vote").
{¶ 37} If one adopts this literal reading, neither Section 8 nor Section 9 of Article XVIII addresses the power of the people to amend a municipal charter by initiative .
*1175 Section 9 specifically provides that proposed amendments "may be submitted to the electors of a municipality by a two-thirds vote of the legislative *507 authority thereof." (Emphasis added.) The use of the permissive "may," rather than the mandatory "shall," indicates that other avenues may exist for amending municipal charters. Pursuant to a literal reading of the word "and," Sections 8 and Section 9 set forth processes pertaining only to the power of referendum, not to the power of initiative, and thus those sections are irrelevant to this case, which involves an initiative petition. Therefore, under this literal reading of those provisions, relators' petition was properly submitted to the board of elections.
{¶ 38} The majority opinion rejects this literal interpretation, deeming it implausible based on this court's previous decisions; however, adopting the majority opinion's reasoning either requires this court to insert the phrase "there are two methods to put a proposed charter amendment on the ballot" as the opening clause of Article XVIII, Section 9, or to replace the word "and" with the word "or." The power to amend the Constitution is reserved to the people of Ohio. Article II, Section 1 of the Ohio Constitution. This court must therefore refrain from adding words to the Constitution or changing the words already contained in it. See State ex rel. Ganoom v. Franklin Cty. Bd. of Elections , 148 Ohio St.3d 339, 2016-Ohio-5864, 70 N.E.3d 592, ¶ 24 (O'Connor, C.J., concurring).
{¶ 39} I also do not agree that this literal interpretation of Article XVIII, Section 9 would render it superfluous. Under this literal reading, Article II, Section 1f reserves the right to amend municipal charters by initiative. This literal reading would give full effect to Article XVIII, Section 9, for that provision specifically outlines the procedure to use when municipal charters are amended through the separate power of referendum. Holding that Article II, Section 1f reserves the right to amend by initiative does not diminish the effect of Article XVIII, Section 9 on the procedure for amending by referendum.
{¶ 40} While it is possible that the majority opinion's interpretation is correct, the majority opinion's reasoning is unpersuasive. I am quite hesitant to reach the majority opinion's conclusion without any briefing and this court's full consideration of the issue.
B. Article XVIII, Section 9 May Apply to Both Initiatives and Referenda but Does Not Require Initiative Petitions to Be Submitted by Municipal Ordinance
{¶ 41} A second plausible reading of Article XVIII, Section 9, treating "and" as the functional equivalent of "or," would provide that proposed charter amendments "may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, [or], upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority." Under this analysis, Article XVIII, Section 9 would allow the amendment of city charters by either initiative or *508 referendum, thus honoring Article II, Section 1f's reservation of both initiative and referendum powers to the people of a municipality.
{¶ 42} Pursuant to this reading, a proposed charter amendment would need to be submitted to the electors by a legislative authority when 10 percent of the electors have signed petitions in its favor. It is unclear what constitutes submission by a legislative authority. The majority opinion would require the legislative authority to enact a municipal ordinance. Article XVIII, Section 9, however, contains *1176 no language requiring that an ordinance be enacted.
{¶ 43} Reliance upon our cases requiring submission by ordinance seems dubious, at best. State ex rel. Hinchliffe v. Gibbons , 116 Ohio St. 390, 156 N.E. 455 (1927), for instance, was premised upon the wording of Cleveland's city charter, which specifically required submission by ordinance, id. at 391, 156 N.E. 455. In State ex rel. Blackwell v. Bachrach , 166 Ohio St. 301, 143 N.E.2d 127 (1957), we stated:
The very plain wording of Section 9, Article XVIII, places the duty to submit a proposed amendment to the electors upon the council and the council alone. It provides further that the submission shall be governed by the requirement of Section 8, Article XVIII, that the council shall provide by ordinance for the submission to the electors. It is clear that once a petition for a charter amendment containing sufficient valid signatures is filed with the council, the only body or person thereafter charged with any duty of submitting the question to the electors is the city council.
(Emphasis deleted.) Id. at 306, 143 N.E.2d 127.
{¶ 44} Despite the assertion in Blackwell to the contrary, however, Section 9 does not require that submission occur by ordinance. The provision does state that "[t]he submission of proposed amendments to the electors shall be governed by the requirements of Section 8 as to the submission of the question of choosing a charter commission." But Section 9 cannot be subservient to the entirety of Section 8 ; otherwise, an amendment could not be submitted until 15 people were elected to frame a new charter, those 15 people actually framed a new charter, and the new charter was submitted and approved by the voters. Instead, one could read the phrase "shall be governed by the requirements of Section 8 as to the submission of the question of choosing a charter commission" as meaning that only the procedural requirements for submitting the question of choosing a charter commission would apply to amending the charter, specifically, that the amendment should "be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days" after submission of the initiative petition. Otherwise, the legislative *509 authority "shall provide for the submission of the [amendment] at a special election to be called and held within the time aforesaid."
{¶ 45} If the court were to adopt this interpretation of Article XIII, Section 9, it would find that the submission of the initiative petition to the board of elections in this case was proper. Relators' initial request for city council to pass an ordinance presumably relied on a questionable line of decisions that were based on the wording of certain city charters. Instead of passing an ordinance, however, upon receiving the initiative petition, the clerk of Toledo's city council, a representative of Toledo's legislative authority, instructed the board of elections to put the proposed amendment on the ballot. This action complied with my second plausible reading of Article XVIII, Section 9 of the Ohio Constitution, and it also followed the specific instruction of Section 5, Toledo City Charter, which does not require passage of an ordinance before an initiative petition is submitted to the board of elections (unlike the Cleveland charter at issue in Hinchliffe ). Under this interpretation of Article XVIII, Section 9, Toledo's municipal charter is not in conflict with the Ohio Constitution.
{¶ 46} Significantly, at least some of the decisions relied upon by the majority opinion that require a city council to pass an *1177 ordinance before an initiative petition to amend a city charter may be placed on the ballot arise under different charter requirements than Toledo has. Indeed, some of the cases cited in the majority opinion show that the particular city charters at issue contained language requiring city-council action before an initiative petition could be placed on the ballot. Hinchliffe , 116 Ohio St. at 391, 156 N.E. 455 ; State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake , 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 25-26 ; State ex rel. Commt. for Charter Amendment Petition v. Maple Hts. , 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 18. In other cases cited in the majority opinion, it is not clear whether city-council action was required by the city charter at issue in the case. See, e.g. , Morris v. Macedonia City Council , 71 Ohio St.3d 52, 641 N.E.2d 1075 (1994) ; State ex rel. Commt. for Charter Amendment Petition v. Avon , 81 Ohio St.3d 590, 693 N.E.2d 205 (1998). Given the factual distinctions either present or possibly present in these cases, we should be cautious about applying those decisions in this case without briefing.
{¶ 47} I reiterate that I make no ultimate decision on the proper interpretation of Article II, Section 1f and Article XVIII, Sections 8 and 9 today. Instead, given the lack of briefing, the parties' acceptance of the statutory authority of the board of elections to have received the proposed amendment, and the plausible readings of the Ohio Constitution permitting the submission of the proposed amendment to the board of elections, I would not treat Article XVIII as a barrier to this court's addressing the separation-of-powers issue presented to us by the parties.
*510 {¶ 48} I would also caution that the majority opinion's interpretation of Article XVIII could limit the initiative power reserved to the people of each municipality in Article II, Section 1f. This decision could lead to an interpretation that all actions to amend a municipal charter-even citizen initiatives-must first be approved by "a two-thirds vote" of the legislative authority of the municipality, thus creating a situation in which municipal legislative authorities may have veto power over any proposed initiatives to amend a charter.
{¶ 49} Pursuant to a literal interpretation of the language of Article XVIII, Section 9, a municipal legislative authority is under no obligation to submit to the board of elections every proposed charter amendment submitted to it. Because Section 9 requires a two-thirds vote of that legislative body in order for a proposed amendment to be advanced, the majority opinion's reading of the Ohio Constitution could allow a perfectly reasonable and lawful amendment to be kept from the ballot solely because a minority of the municipality's legislative authority disagrees with it. Such a situation, in which a legislative authority is given unchecked authority to prevent citizens from exercising express constitutional power, is untenable and unconstitutional.
{¶ 50} Because Article II, Section 1f of the Ohio Constitution expressly reserves the power of initiative to the people of municipalities, and because nothing in Article XVIII expressly constrains that power, I would hold that the language of Article XVIII, Sections 8 and 9 of the Ohio Constitution does not resolve this case or render it unnecessary for us to consider the constitutionality of the amendments to R.C. 3501.11 contained in H.B. 463, which was the issue that was briefed at length by the parties and is ripe for review. This court's delay in reaching this issue simply creates more confusion for the citizens of Ohio.
*1178 II. The Constitutionality of R.C. 3501.11(K) Is Ripe for Review
{¶ 51} Because relators' petition is an initiative petition, it is subject to R.C. 3501.11, which expressly requires a board of elections to "[e]xamine each initiative petition" (emphasis added) to determine whether it constitutes a valid exercise of the initiative power. As I have previously discussed, R.C. 3501.11(K) contains language raising separation-of-powers concerns. See State ex rel. Twitchell v. Saferin , 155 Ohio St.3d 52, 2018-Ohio-3829, 119 N.E.3d 365, ¶ 44 (Fischer, J., dissenting). The need to address these concerns is highlighted by the frequency with which they have been argued before us. Id. The parties actually briefed that issue in this case.
{¶ 52} The importance of addressing those concerns is further underscored by a recent decision by the United States District Court for the Southern District of Ohio. That court found that R.C. 3501.11(K) allows a board of elections-part of the executive branch-to determine disputed legal and constitutional issues, thus potentially blocking initiatives from the ballot without providing those parties a *511 right to judicial review. The court then held that this procedure unreasonably infringes on the First Amendment rights of parties aggrieved by the rejection of an initiative petition. Schmitt v. Husted , 341 F.Supp.3d 784 (S.D.Ohio 2018). The federal district court further held that no legitimate state interest is protected by a lack of appellate review. Given the uncertainty regarding the constitutionality of the amendments to R.C. 3501.11 made by H.B. 463, this court needs to address the constitutional issues, which are squarely before us in this case.
III. Conclusion
{¶ 53} As detailed in my separate opinion in Flak , I would hold that pursuant to State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections , 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, the board of elections' role in processing initiative petitions does not extend to evaluating the substantive ballot-worthiness of a proposal. Flak , 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, at ¶ 54 (Fischer, J., dissenting). Pursuant to that opinion, I would also hold that R.C. 3501.11(K)(2) is unconstitutional, but only to the limited extent that it incorporates R.C. 3501.38(M)(1)(a). Id.
{¶ 54} I respectfully dissent and would grant the writ of mandamus. The board of elections has no authority under the Ohio Constitution to reject a proposed charter amendment on the ground that it contains provisions that are beyond the scope of the power of referendum or initiative. That authority is reserved to the judiciary alone.
O'Connor, C.J., and DeGenaro, J., concur in the foregoing opinion.