DeGenaro, J., concurring.
*454 {¶ 19} I concur in the judgment and opinion of the court. However, I write separately to emphasize the narrow scope of our holding, which is simply that under the Marketable Title Act, R.C. 5301.47 et seq., "a reference that includes the type of interest created and to whom the interest was granted is sufficiently specific to preserve the interest in the record title," majority opinion at ¶ 18. Although this case happens to involve a mineral interest-more specifically, an oil-and-gas royalty interest-the result we have reached did not hinge on the nature of the interest. Therefore, our opinion should not be read to implicitly hold that the more general Marketable Title Act continues to apply to mineral interests following the enactment of the Dormant Mineral Act, R.C. 5301.56 -a more specific statute providing for the termination of those interests.
{¶ 20} I question the Marketable Title Act's continued applicability in the context of this specialized real-property interest. On this point, the review of the evolution of the Marketable Title and Dormant Mineral Acts set forth in Corban v. Chesapeake Exploration, L.L.C. , 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, is instructive:
When initially enacted, the Marketable Title Act did not "bar or extinguish any right, title, estate, or interest in and to minerals, and any mining or other rights appurtenant *138 thereto or exercisable in connection therewith." Former R.C. 5301.53(E), 129 Ohio Laws [1040] 1046. However, the General Assembly amended former R.C. 5301.53 and former R.C. 5301.56 in 1973 "to enable property owners to clear their titles of disused mineral interests." Am.S.B. No. 267, 135 Ohio Laws, Part I, 942-943. Thus, the Marketable Title Act extinguished oil and gas rights by operation of law after 40 years from the effective date of the root of title unless a saving event preserving the interest appeared in the record chain of title-i.e., the interest was specifically identified in the muniments of title in a subsequent title transaction, the holder recorded a notice claiming the interest, or the interest "[arose] out of a title transaction which has been recorded subsequent to the effective date of the root of title." R.C. 5301.48 and 5301.49.
* * *
The General Assembly again amended the Marketable Title Act in 1989 when it enacted the Dormant Mineral Act, Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981, 985-988 * * *, "to provide a method for the termination *455 of dormant mineral interests and the vesting of their title in surface owners, in the absence of certain occurrences within the preceding 20 years." 142 Ohio Laws, Part I, at 981.
(Second brackets sic.) Corban at ¶ 18-19.
{¶ 21} However, "[d]ormant mineral interests did not automatically pass by operation of law to the surface owner pursuant to the 1989 law." Id. at ¶ 31. Accordingly, the General Assembly further amended the Dormant Mineral Act in 2006 to "provide[ ] a method for the surface holder to obtain marketable record title to an abandoned mineral interest without having to resort to litigation to have that interest declared abandoned." Id. at ¶ 35. "The 2006 amendment to R.C. 5301.56(B) provides that a dormant mineral interest 'shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied.' " Id. at ¶ 29, quoting 2006 Sub.H.B. No. 288.
{¶ 22} The fact that the legislature amended the more general Marketable Title Act to include the Dormant Mineral Act, which provides a distinct process specifically for the termination of mineral interests, strongly suggests that the Dormant Mineral Act should be the controlling law and the exclusive remedy for this discrete class of real-property interests. See MacDonald v. Cleveland Income Tax Bd. of Rev. , 151 Ohio St.3d 114, 2017-Ohio-7798, 86 N.E.3d 314, ¶ 27 ("when there is a conflict between a general provision and a more specific provision in a statute, the specific provision controls"), citing Scalia & Garner, Reading Law: The Interpretation of Legal Texts 183 (2012) and R.C. 1.51.
{¶ 23} However, the continued applicability of the Marketable Title Act in light of the more specific Dormant Mineral Act was not raised as a proposition of law in this appeal, and our review is generally constrained by the arguments raised by the parties. See State ex rel. Twitchell v. Saferin , 155 Ohio St.3d 52, 2018-Ohio-3829, 119 N.E.3d 365, ¶ 11 (O'Connor, C.J., concurring), citing Sizemore v. Smith , 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2 ; see also State ex rel. Maxcy v. Lucas Cty. Bd. of Elections , 154 Ohio St.3d 1401, 2018-Ohio-4419, 111 N.E.3d 1 (DeGenaro, J., dissenting). Given that this question is *139 not squarely before us, we cannot reach its merits. For now, it remains an open issue that is for this court's future review.
{¶ 24} Quieting title to severed mineral interests, especially oil-and-gas interests, is a significant matter that impacts the overall economy of this state-especially southeast Ohio. Thus, I write separately to highlight this issue and to stress the narrow scope of our holding today.